UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted December 20, 2006[*]
Decided December 26, 2006

Before

**Hon.** FRANK H. EASTERBROOK, Chief Judge

**Hon.** RICHARD A. POSNER, Circuit Judge

**Hon.** DANIEL A. MANION, Circuit Judge

No. 06-2177

CHANDRA DAMAYANTI, *et al.*,
    *Petitioners*,

      *v.*

ALBERTO R. GONZALES, Attorney General,
    *Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals.

## Order

Chandra Damayanti, her husband, and her two sons, all citizens of Indonesia, petition for review of an order requiring their removal from the United States. All members of the family seek asylum or withholding of removal, but the immigration judge concluded that they had not encountered persecution in Indonesia and do not have a well-founded fear of future persecution there. The Board of Immigration Appeals agreed in a short opinion that substantially relied on the IJ's decision.

Petitioners contend, and the IJ found, that the family has been treated poorly by relatives and neighbors on religious and ethnic grounds. Damayanti was raised as a Muslim but converted to Christianity in 2001 following her marriage to Krisna Hardiansyah, whose ancestors were Chinese. Damayanti's parents and other rela-

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

tives do not approve either her choice of husband or her new religion. Both her relatives and some of her neighbors have threatened her, but none of these threats was reported to any public official and none has been carried out. One of Damayanti's sons was harassed in public school because of his Chinese features; he moved to a private school where classmates were more tolerant. Damayanti maintains that private education entails considerable expense and inconvenience.

The record before the IJ contains evidence of anti-Chinese riots in 1998 (four years before the petitioners arrived in the United States) and continuing hostility among the populace toward persons of Chinese ethnicity. But the IJ found, with support in the record, that Indonesia's government has "made progress" in reducing ethnic and religious violence. Conversion from Islam to Christianity is lawful in Indonesia, and 8% of the populace (about 20 million people in total) is Christian. The IJ concluded that petitioners would not encounter a substantial risk of persecution today in Indonesia, and that neither the hostility of one's relatives nor the perceived need to use private education is a form of persecution.

The Board acknowledged that life in Indonesia was unpleasant for the petitioners but stated that "actions must rise above the level of mere harassment to constitute persecution for purposes of the asylum statutes." That understanding is legally correct. Unfulfilled threats do not amount to "persecution" unless they are of an "immediate and menacing nature." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *Boykov v. INS*, 109 F.3d 413, 415–16 (7th Cir. 1997). The IJ and BIA did not abuse their discretion in concluding that threats (from relatives and neighbors) become less menacing when repeated over the years but nothing happens. (Damayani and Hardiansyah married in 1996; they lived together in Indonesia for six years before entering the United States on visitors' visas.) The passage of time shows that the threats are empty, or so the agency could conclude.

Moreover, the fact that these threats were not made or abetted by public officials undermines the argument that persecution occurred; substantial evidence supports the IJ's conclusion that Indonesia's government is willing and able to protect Christians and ethnic Chinese from most private violence. Indonesia is a large nation with a history of domestic unrest; protection occasionally fails, but perfection is not required. See *Firmansjah v. Gonzales*, 424 F.3d 598, 606–07 (7th Cir. 2005) (substantial evidence supports a conclusion that Christians of Chinese ancestry are not systematically persecuted in Indonesia). Accord, *Susanto v. Gonzales*, 439 F.3d 57, 60–61 (1st Cir. 2006); *Lie v. Ashcroft*, 396 F.3d 530, 537–38 (3d Cir. 2005). Damayanti maintains that her father is a "powerful" figure who could kill or ruin her family without fear of the police, but the fact that her father did nothing for six years permitted the IJ and BIA to reach a contrary conclusion.

As for the Damayanti's decision to send her children to expensive private schools: the agency did not commit a clear error or abuse its discretion in concluding that private discrimination by classmates is not a form of "persecution." See *Bucur v. INS*, 109 F.3d 399, 402–03 (7th Cir. 1997).

The petition for review is denied.